UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GORDON DEVERE SCHULTZ,

        Petitioner,                        Case No. 12-cv-10096

v.                                      HONORABLE STEPHEN J. MURPHY, III

CAROL HOWES,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A
CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

      This is a petition for a writ of habeas corpus. Petitioner Gordon Devere Schultz is

presently confined at the Lakeland Correctional Facility in Coldwater, Michigan. He filed a

*pro se* application for a writ of habeas corpus under 28 U.S.C. § 2254. Schultz challenges

his conviction for first-degree premeditated murder, Mich. Comp. Laws. § 750.316(1)(a);

and aggravated stalking, Mich. Comp. Laws § 750.411i. For the reasons stated below, the

application for writ of habeas corpus will be denied.

**BACKGROUND**

      Schultz was convicted of the above charges following a jury trial in the Isabella

County Circuit Court. The Court recites verbatim the relevant facts relied upon by the

Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28

U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> The evidence showed defendant and his former girlfriend and victim Becky Sue
> Macdonald, had a violent and abusive relationship. Evidence also showed
> Macdonald received a great deal of the abuse, often exhibiting bruises on her
> face and arms and red marks on her neck where defendant tried to choke her.
> Based on the information given by Macdonald to the various witnesses (friends,
> family, and police officers), defendant would sometimes beat her if she (1) left
> the house, (2) talked on the phone, and (3) argued.

[T]here was testimony presented that days before the murder defendant was angry because the victim allegedly burned his clothes and a pair of glasses he needed for work, and she removed items from his home. However, we cannot conclude these actions would cause a reasonable person to lose control. Further, testimony from defendant's friend, Lee Blalock, indicated that she removed the clothes from the home on October 17, 2005, the day after defendant's arrest, when he was released on bond. This was several weeks before Macdonald's reported disappearance on November 11, 2005. Indeed, Macdonald was also asked about burning defendant's clothing at the preliminary examination on October 27, 2005, and thus, this "provocation," too, happened well before her death.

......................................................................................................

[M]acdonald told several witnesses that she feared defendant and that he had threatened to kill her. Further, defendant also told three witnesses that essentially he wanted to kill Macdonald to prevent her from testifying in his domestic violence trial. Defendant told one witness that he had dug a hole for Macdonald's grave. He also told two witnesses that he was driving a rental car because "you can't fit somebody in the back of a hatchback."

......................................................................................................

[I]n addition, defendant told his cellmate that he had called Macdonald prior to the murder and she had agreed to walk out of the house to meet him. Although medical experts could not state conclusively how Macdonald died, they agreed it was asphyxiation, and defendant himself seemed to indicate that he choked her to death. Dr. Joyce DeJong, a forensic pathologist, explained that, with manual strangulation, while the victim will pass out after 30 seconds of constant pressure, it takes minutes for death to occur, though it can be longer if the victim struggles. Therefore, defendant would have had time to take a second look at what he was doing. Finally, regarding defendant's conduct after the murder, not only did he burn the body to hide DNA evidence and bury the body in a remote location, he also hired a person he thought was a hit man to kill Macdonald's daughter in an attempt to thwart the ongoing investigation into Macdonald's disappearance and he asked the hit man to go to the burial site and do whatever was necessary to ensure that Macdonald's body could never be found.

*People v. Schultz*, No. 283669, 2009 WL 1830742, at *2-3 (Mich. Ct. App. June 25, 2009).

Schultz's conviction was affirmed on appeal. *Id.* at *1, 3*, lv. den.* 485 Mich. 977

(2009). He subsequently filed a motion for relief from judgment in the trial court which was

denied. *People v. Schultz*, No. 07-830-FC, (Isabella Cir. Ct. Nov. 30, 2010). He then filed

for application for leave to appeal which was also denied. *People v. Schultz*, No. 301518

2

(Mich. Ct. App. June 15, 2011), *lv. den.* 490 Mich. 968 (2011).

## STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "a federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a

3

'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).

"[I]f this standard is difficult to meet, that is because it was meant to be." *Id.* Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from granting relief for claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Therefore, to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

## DISCUSSION

Schultz seeks a writ of habeas corpus on the following grounds: First, that his right to due process of law as well as his Sixth Amendment right to effective assistance of appellate counsel was violated when counsel refused to raise the following issues that he requested counsel to raise; second, that his right to due process as well as his Fifth, Sixth,

and Fourteenth Amendment rights were violated by the admission of statements made to an undercover officer and a police informant; and third, that his right to due process as well as his Fifth Amendment right to remain silent were violated by the introduction and use of his silence as substantive proof of guilt.

The Court will consolidate claims one, two and three, as they are all interrelated. Schultz alleges that he was denied his Sixth Amendment right to the effective assistance of appellate counsel when appellate counsel refused to raise issues two and three contained within petitioner's habeas petition.

I.    Did Schultz Procedurally Default Claims?

Schultz raised issues two and three for the first time in his motion for relief from judgment. As a result, respondent contends that petitioner's second and third claims are procedurally defaulted, because he raised them for the first time in his post-conviction motion for relief from judgment and petitioner failed to show cause for failing to raise these issues in his appeal of right, as well as prejudice, as required by Mich. Ct. R. 6.508(D)(3).

Schultz argues in his first claim that his appellate counsel was ineffective for failing to raise his claims in his appeal of right. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). If petitioner could show that he received ineffective assistance of appellate counsel that rose to the level of a Sixth Amendment violation, it would excuse his procedural default for failing to raise his claims on his direct appeal in the state courts. *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett*, 348 F. Supp. 2d

5

825, 836 (E.D. Mich. 2004). Additionally, petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010); *Hicks v. Straub*, 377 F.3d 538, 558 n.17 (6th Cir. 2004); *Johnson v. Warren*, 344 F. Supp. 2d 1801, 1089 n.1 (E.D. Mich. 2004). In this case, because "the procedural default issue raises more questions than the case on the merits", this Court will assume, for the sake of resolving the claims, that there is no procedural default by Schultz and will decide the merits of the claims. *Falkiewicz v. Grayson*, 271 F. Supp. 2d 942, 948 (E.D. Mich. 2003) (internal quotation omitted).

## II.    Ineffective Assistance of Counsel

Schultz alleges that counsel was ineffective for failing to bring issues two and three on his direct appeal.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "*Strickland's* test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123 (citing *Yarborough*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id*. This means that on habeas review of a state court conviction, "a state court must be granted a deference and latitude that are not in operation when the case

involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Furthermore, although the Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right, *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985), court-appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

III.   Admission of Certain Statements

In his second claim, petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment rights were violated by the admission of statements to an undercover officer and a police informant.

A.   Legal Standards

A prosecutor may not use a defendant's statements which stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Unless other means are devised to inform a suspect of his right to silence and a "continuous opportunity to exercise it," the following warnings are required to be given to a suspect:

> 1. the person must be warned that he has a right to remain silent;
> 2. that any statement he does make may be used against him;
> 3. and that he has a right to the presence of an attorney, either appointed or retained.

*Id.*

Police officers, however, are not required to administer *Miranda* warnings to every person whom they question nor are they required to administer *Miranda* warnings simply

because the questioning takes place in a police station or because the questioned person is one whom the police suspect. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). Instead, *Miranda* warnings are required "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" "Custody," for purposes of *Miranda*, requires a "significant deprivation of freedom." *See Mason v. Mitchell*, 320 F.3d 604, 632 (6th Cir. 2003). Two discrete inquiries are essential to determining whether a criminal suspect was in custody at time of interrogation, and therefore entitled to *Miranda* warnings: first, what were the circumstances surrounding the interrogation, and second, given those circumstances, would a reasonable person have felt that he or she was not at liberty to terminate the interrogation and leave. *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995). The initial determination of whether a suspect is in custody, for purposes of *Miranda*, depends on the objective circumstances of the interrogation, not on the subjective views harbored by the interrogating officer. *See Stansbury v. California*, 511 U.S. 318, 323 (1994). Stated differently, a policeman's unarticulated plan has no bearing upon whether a suspect is "in custody," so as to require *Miranda* warnings. Instead, the relevant inquiry is "how a reasonable man in the suspect's position would have understood his situation." *See Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

Furthermore, the Sixth Amendment right to counsel "does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Texas v. Cobb*, 532 U.S. 162, 167-68 (2001) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)) (internal citations and quotation marks omitted); *see also Davis v. United States*, 512 U.S. 452, 456-57 (1994).

9

B.  Application

Schutz alleges that appellate counsel was ineffective for not raising issue two, which pertains to the admission of statements made to an inmate and an undercover agent while he was incarcerated on an unrelated offense.

Once a defendant's Sixth Amendment right to counsel has formally attached, a defendant is denied that right when law enforcement officials "deliberately elicit" incriminating statements from him in the absence of his lawyer. *Massiah v. United States*, 377 U.S. 201, 206 (1964). The Sixth Amendment, though, does not forbid the admission of a criminal defendant's statements to a jailhouse informant who may be placed in close proximity to the defendant in jail but who makes no effort to initiate or to stimulate conversations about the crime with which the defendant is charged. *See Kuhlmann v. Wilson*, 477 U.S. 436, 456 (1986). The Supreme Court has specified that "[w]hen a suspect considers himself in the company of cellmates and not officers, the coercive atmosphere is lacking." *Illinois v. Perkins*, 496 U.S. 292, 296 (1990) (citing *Miranda*, 384 U.S. at 449). As a result, a defendant's Sixth Amendment right to counsel is "is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached." *Maine v. Moulton*, 474 U.S. 159, 176 (1985). A criminal defendant thus does not show a violation of his Sixth Amendment right to counsel merely by showing that an informant, either through a prior arrangement with the police or voluntarily, reported his incriminating statements to the police. *Kuhlmann*, 477 U.S. at 459. *Massiah* is concerned with secret interrogation by investigatory techniques which are considered the equivalent of direct police interrogation. A defendant must therefore demonstrate that the police and their informant took some action, beyond merely

10

listening, which was designed deliberately to elicit incriminating remarks from the defendant. *Id.*

The trial court's ruling, in connection with petitioner's motion for relief from judgment, found that the statements elicited from Schultz were properly admitted at trial as follows:

> [D]efendant claims he made the statements obtained from the inmate and the undercover officer outside the presence of counsel, and when the court admitted such statements, it violated his right to counsel under the Sixth Amendment. This court disagrees. Under the Sixth Amendment, governmental agents are prohibited from using incriminating statements that they deliberately elicit from the accused outside the presence, or absent the waiver, of counsel after the initiation of judicial proceedings. *Maine v Moulton*, 474 US 159, 176; 106 S Ct 477; 88 LEd 2d 481 (1985). As stated above, the Sixth Amendment right to counsel is "offense specific," and the government may elicit incriminating statements from an incarcerated defendant so long as the statements elicited do not concern the particular offense or offenses for which adversary judicial proceedings have already commenced. *Wisconsin*, *supra*[1]; *Illinois v Perkins*, 496 US 292, 299; 110 S Ct 2394; 110 LEd 2d 243 (1990).

> When defendant made the statements to the inmate and the undercover officer, he was incarcerated for an unrelated offense to the crimes in this case. (MH, 23.) The trial court, specifically relying on *Perkins*, *supra*, held that not only did the Sixth Amendment right to counsel not apply to such incident because defendant was incarcerated for an unrelated offense, it also allowed the prosecutor to admit such statements. *Id.* at 23-24. Accordingly, this court finds that the court did not violate defendant's Sixth Amendment right to counsel because when he made the incriminating statements, he was incarcerated for an unrelated offense, not the crimes in this case.

> Further defendant claims that he made such statements without the protection of the Fifth Amendment and the appropriate warnings under *Miranda*, *supra*, which violated his constitutional rights. This court again disagrees. The United States Supreme Court held:

>> Law enforcement officers will have little difficulty putting into practice our holding that undercover agents need not give *Miranda* warnings to incarcerated suspects. The use of undercover agents is a recognized law enforcement technique, often employed in the prison context to detect violence against correctional officials or inmates, as well as for the purposes served here. The interests protected by *Miranda* are not

---

[1] *See McNeil v Wisconsin*, 501 U.S. 171, 175 (1991).

implicated in these cases, and the warnings are not required to safeguard the constitutional rights of inmates who make voluntary statements to undercover agents.

We hold that an undercover law enforcement officer posing as a fellow inmate need not give Miranda warnings to an incarcerated suspect before asking questions that may elicit an incriminating response. The statements at issue in this case were voluntary, and there is no federal obstacle to their admissibility at trial.

[*Perkins*, supra at 299-300.]

Thus, defendant was not entitled to *Miranda* warnings when he made voluntary statements to the undercover officer and the inmate. Accordingly, this court finds that defendant's Fifth Amendment right to counsel was also not violated when the court admitted evidence of his statements to the undercover officer and the inmate.

*People v. Schultz,* No. 07-830-FC, (Isabella Cir. Ct. Nov. 30, 2010), at *4-6.

While incarcerated for domestic violence, Schultz inadvertently contacted Detective Sergeant Eberhardt, who was an undercover agent posing as a hit man in the investigation of the death of Becky Sue Macdonald. Charges had not yet been filed in Macdonald's death. Schultz was not confronted by a uniform dressed officer when he called Detective Sergeant Eberhardt from Jackson prison, gave instructions to kill the victim's daughter and told the agent where to find the victim's body. (Tr. 1/10/08, pp. 58-59, 62). Following the conversations with Eberhardt, the victim's body was found with a stick and a pile of leaves under eight inches of snow. (Tr. 1/8/08 p.33). "[T]he conversations with the under cover police officer were basically initiated by the Defendant because he wanted to talk to an individual who he thought was a hit man." (Tr. 8/17/07 p. 23-25). The trial court found that the statements were admissible being that Schultz contacted the officer to solicit services in the furtherance of a murder. The trial court also allowed into evidence the conversation between an informant and the petitioner. The informant was not employed by the police and

reported remarks made by petitioner while incarcerated for the unrelated offense of domestic violence. (*Id.* at 18).

In *Perkins*, the Supreme Court specifically stated that the Sixth Amendment offers no protections from undercover agents until after charges for the interrogation subject are filed. *Perkins*, 496 U.S. at 299-300. Being that no murder charges were filed at the time and because the Sixth Amendment right-to-counsel protections are offense specific, no Sixth Amendment violation occurred.

In addition, the admission of petitioner's statements to the undercover agent and police informant was harmless error at worst. The admission of evidence obtained from a suspect in violation of *Miranda* is considered harmful only if it has a substantial and injurious effect in determining the jury's verdict. *See Kyger v. Carlton*, 146 F.3d 374, 381-82 (6th Cir. 1998). In light of the overwhelming evidence of guilt in this case, including Petitioner's statements to other witnesses who testified at trial, the admission of his statements to the informant and the agent did not have a substantial or injurious influence or effect on the jury's verdict. *Id.* Petitioner is not entitled to habeas relief on his second claim.

IV.   Fifth Amendment Claim

In his third claim, Schultz alleges that appellate counsel was ineffective for not raising on his direct appeal a violation of his Fifth Amendment rights due to the admission of testimony and a recording pertaining to his refusal to speak with officers during the November 17, 2005 visit to his home.

A. Legal Standards

13

When an accused invokes his right to counsel during custodial interrogation, that interrogation must cease until counsel is made available, unless the accused initiates further conversation with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). The rule in *Edwards* is considered "a corollary to *Miranda's* admonition that '[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present.'" *Arizona v. Roberson*, 486 U.S. 675, 680 (1988) (quoting *Miranda*, 384 U.S. at 474). The rationale behind *Edwards* is that once the accused informs law enforcement officials "he is not capable of undergoing [custodial] questioning without advice of counsel," "any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the 'inherently compelling pressures' and not the purely voluntary choice of the suspect." *Maryland v. Shatzer*, 130 S. Ct. 1213, 1219 (2010) (quoting *Roberson*, 486 U.S. at 681).

A number of courts have held that the rule established in *Edwards* is applicable only if a person is subjected to an interrogation while in police custody. *See Burket v. Angelone*, 208 F.3d 172, 197 (4th Cir. 2000) (petitioner "could not invoke the protections provided by *Miranda*," including the right to counsel, "because he was not 'in custody' at the time he stated 'I think I need a lawyer'"); *United States v. Wyatt*, 179 F.3d 532, 538 (7th Cir. 1999) ("The Fifth Amendment right to counsel safeguarded by *Miranda* cannot be invoked when a suspect is not in custody, even if in anticipation of future custodial interrogation."); *United States v. Bautista*, 145 F.3d 1140, 1147 (10th Cir. 1998) ("[I]n order to implicate the *Miranda-Edwards* right to counsel prophylaxis, both a custodial situation and official interrogation are required."); *Alston v. Redman*, 34 F.3d 1237, 1244 (3rd Cir. 1994) ("*Miranda* is not implicated" absent "both a custodial setting and official interrogation");

14

*Tukes v. Dugger*, 911 F.2d 508, 515 (11th Cir. 1990) ("Where the prisoner is not in custody, the *Edwards* and *Roberson* concerns are not triggered because the non-custodial defendant is free to refuse to answer police questions, free to leave the police station and go home, and free to seek out and consult a lawyer"); *United States v. Assi*, 512 F.Supp. 2d 1047, 1055 (E.D. Mich. 2007) (Rosen, J.) (when suspect ultimately charged with providing material support to designated foreign terrorist organization was admittedly not under arrest during questioning by federal agents, and agents had informed suspect that he was free to conclude questioning at any time, interview was non-custodial, and suspect had no right to counsel during it); *United States v. Ridley*, 199 F. Supp. 2d 704, 713 (S.D. Ohio 2001) (defendant's alleged question to FBI agent before being questioned at the FBI offices, in which he asked agent whether he needed a lawyer, was insufficient to invoke defendant's right to counsel under *Miranda*; defendant was not in custody); *Trapani v. Stovall*, 2006 WL 123784, at *9 (E.D. Mich. January 17, 2006) (Tarnow, J.) ("Because petitioner was not subjected to custodial interrogation in this case, the dictates of *Edwards* do not apply"); *see also United States v. Martin*, 95 F. App'x 169, 178 n.8 (6th Cir. 2004) ("Martin's claim may also fail for the additional independent reason that since Martin was not in custody for purposes of *Miranda* when he made his initial phone call to his attorney, *Edwards* does not apply.").

The holdings in these cases are consistent with Supreme Court jurisprudence. In *Montejo v. Louisiana*, 556 U.S. 778 (2009), the Supreme Court overruled their previous decision in *Michigan v. Jackson*, 475 U.S. 625 (1986), which had forbid the police from initiating an interrogation of a criminal defendant once he has invoked his Sixth Amendment right to counsel at an arraignment or similar proceeding. In *Montejo*, the Supreme Court

noted that:

> [t]he *Miranda-Edwards* regime is narrower than *Jackson* in one respect: The former applies only in the context of custodial interrogation. If the defendant is not in custody then those decisions do not apply; nor do they govern other, noninterrogative types of interactions between the defendant and the State (like pretrial lineups). However, those uncovered situations are the least likely to pose a risk of coerced waivers. When a defendant is not in custody, he is in control, and need only shut his door or walk away to avoid police badgering.

*Id.* at 795.

The Supreme Court further observed that they had "never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation.'" *Montejo*, 556 U.S. at 797 (quoting *McNeil*, 501 U.S. at 182 n.3). Language in other Supreme Court cases also suggests that the rule in *Edwards* applies only in the context of custodial interrogation. *See McNeil*, 501 U.S. at 178 (The purpose of the *Miranda-Edwards* guarantee is narrower than the one protected by the Sixth Amendment right to counsel because it relates only to custodial interrogation); *Minnick v. Mississippi*, 498 U.S. 146, 154 (1990) ("*Edwards'* purpose [is] to protect the suspect's right to have counsel present at custodial interrogation").

In light of the rationale behind *Edwards*, the fact that the Supreme Court has suggested that *Edwards* does not apply to non-custodial interrogations, and the fact that numerous courts, including the Sixth Circuit and two judges within this district, have concluded that *Edwards* applies only if a person is subjected to a custodial interrogation, Schultz is unable to show that appellate counsel was ineffective for failing to bring this claim and that it would have been successful on appeal. Indeed, the extension of *Miranda* and *Edwards* "outside of the context of custodial interrogation, would diminish the 'bright-line' nature of the Supreme Court's *Miranda* jurisprudence, often cited by the Court as one of

16

the qualities of that body of law." *Alston*, 34 F.3d at 1249 n.11.

Finally, even if the Supreme Court's holding in *Edwards* extended to non-custodial situations, petitioner would still not be entitled to habeas relief on his claim, because petitioner responded that he did not know the whereabouts of the victim and then stated that he should not be speaking with the officers, before going into his residence. Petitioner was not in custody, was in control, and did indeed walk away and shut his door to avoid any alleged police badgering.

In *Oregon v. Bradshaw*, 462 U.S. 1039 (1983), a plurality of the Supreme Court concluded that the police could speak to a defendant, without depriving him of his rights, when the defendant asked "Well, what is going to happen to me now?" even though the defendant had previously invoked his right to counsel. *Id.* at 1041-42. The plurality concluded that by asking this question, the defendant had "evinced a willingness and a desire for a generalized discussion about the investigation." *Id.* at 1045-46. By contrast, the dissent in *Bradshaw* indicated that in order to reinitiate an interrogation after invoking the right to counsel, the suspect must "demonstrate a desire to discuss the subject matter of the investigation." *Id.* at 1055. The Sixth Circuit "has reconciled the plurality and dissent in *Bradshaw* as stating a general rule that 'an *Edwards* initiation occurs when, without influence by the authorities, the suspect shows a willingness and a desire to talk generally about his case.'" *Davie v. Mitchell*, 547 F.3d 297, 305 (6th Cir. 2008) (quoting United *States v. Whaley*, 13 F.3d 963, 967 (6th Cir. 1994)).

B. Application

When the officers approached petitioner on November 17, 1005, Schultz was at home and not in custody. He informed the police that he believed that he should not be talking

17

to them. Petitioner was free to leave the officers' presence, and in fact, did leave to go back into his home. Being that he was not in custody, *Miranda-Edwards* did not apply to his situation. The admission of petitioner's silence and subsequent incriminating statements did not violate his Fifth Amendment rights.

Upon review of petitioner's motion for relief from judgment, the trial court found that Schultz had not been charged and was not in custody at the time he made the alleged statements. Thus, the prosecutor was free to remark on petitioner's pre-*Miranda* silence.

> On November 17, 2005, Detective Patterson and Detective Carter arrived at defendant's home to question him about the disappearance of the victim in this case. (MH, 15; JT II, 98-99, 113-115.) Detective Patterson stated that they did not arrest defendant or take defendant into custody, and in fact, the court found that defendant was not in custody on such occasion. (MH, 10, 15, 22.) After some questioning, defendant stated that he did not want to talk with the officers, and the officers ended their contact with him. (MH 10, 15; JT II, 99, 117.) During the prosecutor's closing argument, he played the recorded conversation that took place between the officers and defendant, and remarked on defendant's choice to remain silent after the officers questioned him. (1/11/2008 Jury Trial, Volume V, 23.)
>
> This court finds that the prosecutor's remarks did not violate defendant's due process rights under the Fifth and Fourteenth Amendments of the United States Constitution because he was not in custody at the time he chose to end his contact with the officers. Defendant was at his home and the officers did not arrest him or restrict his freedom in any way. They terminated their questions as soon as defendant stated he did not wish to speak with them. Thus, the prosecutor was free to remark on defendant's per-arrest, pre-Miranda silence. *See Shafter*, *supra*. Further, defendant's appellate counsel had no reason to appeal the evidence of such statements because defendant was not entitled to the right to remain silent because the officers did not subject him to custodial interrogation, and because the trial court previously ruled that defendant was not in custody and that it would allow such evidence at defendant's trial. Accordingly, this court finds that defendant did not receive ineffective assistance of counsel on this issue.

*Schultz*, No. 07-830-FC, at 4.

Petitioner was not charged, nor in custody, nor was he in any way restrained. His Fifth Amendment rights were not violated; therefore, the officers were not obligated to give him

*Miranda* warnings.

Schultz further claims that the prosecutor committed misconduct by mentioning his refusal to speak with the officers.

A habeas court may only look at the holdings of the United States Supreme Court as they existed at the time of the relevant state court decision to determine whether the state court decision was contrary to, or an unreasonable application of, clearly established federal law. *Mitzel v. Tate*, 267 F.3d 524, 530-31 (6th Cir. 2001). A habeas court cannot look to the decisions of this circuit, or other courts of appeals, when deciding whether a state court's decision was contrary to, or an unreasonable application of, clearly established federal law. *Id.* Although the Sixth Circuit has held that pre-*Miranda* silence cannot be used as substantive evidence of guilt, *See Combs v. Coyle*, 205 F.3d 269, 282–83 (6th Cir. 2000), Sixth Circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court" and thus "cannot form the basis for habeas relief under [the] AEDPA." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012). The Sixth Circuit's holding in *Combs* is therefore not controlling in this case. *See Hall v. Vasbinder*, 563 F.3d 222, 232 (6th Cir. 2009).

The Supreme Court has not spoken dispositively on the issue of whether the use of a criminal defendant's pre-arrest or post-arrest, pre-*Miranda* silence as substantive evidence violates the Fifth or Fourteenth Amendments. In fact, there appears to be a split in the circuits on this issue. A number of circuits have held that it is permissible for a prosecutor to use a criminal defendant's silence after he or she is arrested, but before *Miranda* warnings have been given, as substantive evidence. *Compare United States v. Frazier*, 408 F.3d 1102, 1111 (8th Cir. 2005) (holding that when no governmental action

19

induced post-arrest, pre-*Miranda* silence, it could be introduced as evidence of guilt); *United States v. Rivera*, 944 F.2d 1563, 1568 (11th Cir. 1991) (prosecution may comment on a defendant's post-arrest silence prior to *Miranda* warnings being given); *United States v. Love*, 767 F.2d 1052, 1063 (4th Cir. 1985) (same); *with United States v. Moore*, 104 F.3d 377, 385 (D.C.Cir. 1997) (introduction of defendant's pre-*Miranda* custodial silence violates the Fifth Amendment); *United States v. Whitehead* 200 F.3d 634, 638 (9th Cir. 2000) (same).

In the present case, the Supreme Court has not spoken conclusively on the issue of whether the use of a criminal defendant's pre-arrest silence as substantive evidence violates the Fifth or Fourteenth Amendments. The Supreme Court's failure to rule on this issue, coupled with the "disagreement and confusion" among the federal courts concerning the resolution of this issue, precludes this Court from finding that the Michigan Court of Appeals' decision was an unreasonable application of clearly established federal law, where clearly established Supreme Court precedent on the issue of using pre-arrest silence as substantive evidence of guilt did not, and does not, exist. *See Worden v. McLemore*, 200 F. Supp. 2d 746, 752-53 (E.D. Mich. 2002) (Cohn, J.). In the lack of Supreme Court precedent on the use of a defendant's pre-arrest silence as substantive evidence of guilt, the state trial court's admission of evidence of defendant's pre-arrest silence as substantive evidence of guilt was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent addressing the Fifth Amendment right to remain silent and the Fourteenth Amendment right to due process so as to warrant federal habeas relief. *See Jones v. Trombley*, 307 F. App'x 931, 934 n.1 (6th Cir. 2009); *Mitchell v. Lafler*, 118 F. App'x 24, 26-27 (6th Cir. 2004); *Cameron*, 348 F. Supp. 2d at 841-42.

Moreover, any admission of petitioner's pre-arrest silence in this case would have been harmless error at best, in light of the overwhelming evidence against Schultz. *See United States v. Banks*, 29 F. App'x. 276, 284 (6th Cir. 2002).

The Court will reject petitioner's related ineffective assistance of counsel claim. To prevail on his ineffective assistance of counsel claims, Schultz must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones*, 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

In light of the fact that the evidence against petitioner was overwhelming in this case, petitioner was not prejudiced by appellate counsel's failure to raise on appeal issue two and issue three contained in his habeas petition. *See Harding v. Bock*, 107 F. App'x 471, 479-80 (6th Cir. 2004). Being that the second and third claims are without merit, "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Appellate counsel was not ineffective in handling petitioner's direct appeal. Schultz is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

V.   Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, before a petitioner may appeal a decision of this Court, the Court must determine if petitioner is entitled to a Certificate of Appealability (COA). 28

U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). The Court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

In applying the above standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Miller-El v. Cockrell*, 537 U.S. at 336-37. "When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a federal court should "limit its examination to a threshold inquiry into the underlying merit of his claims." *Id.* at 323. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

After conducting the required inquiry, and for the reasons stated in the order above, the Court finds that Schultz has not made a substantial showing of the denial of a constitutional right with respect to his claims. *See* 28 U.S.C. § 2253(c)(2). Petitioner should not receive any encouragement to proceed further. *Slack*, 529 U.S. at 484. Because the

Court can discern no good faith basis for an appeal, *see Miller-El*, 537 U.S. at 338, any appeal would be frivolous. The Court will therefore deny a certificate of appealability. *See Long v. Stovall,* 450 F. Supp. 2d 746, 755 (E.D. Mich. 2006). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be  frivolous. *See Hence v. Smith*, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999).

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Schultz's petition for a writ of habeas corpus (document no. 1) is **DENIED**. This case is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner will be denied leave to appeal *in forma pauperis.*

**SO ORDERED**.


s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: May 17, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 17, 2014, by electronic and/or ordinary mail.

s/Carol Cohron
Case Manager